This is a criminal action in which the defendant Albertus Sylvester Grier was tied on an indictment in which he was charged with the murder of Waddell Mackey in Mecklenburg County, on 18 April, 1936.
At the trial the evidence for the State tended to show that between 7 and 8 o'clock, on the night of 18 April, 1936, the defendant went into a cafe in the city of Charlotte, and there found Waddell Mackey and others with whom he had shortly before had a quarrel; that as he was leaving the cafe, the defendant requested Waddell Mackey to come out of the cafe of the sidewalk, saying that he wished to talk with him; that as Waddell Mackey came out of the cafe to the sidewalk, where the defendant was standing, he grabbed a shotgun from a bystander, and as *Page 721 
Waddell Mackey started to walk down the sidewalk away from him the defendant shot Waddell Mackey and thereby inflicted a wound from which he died within about 20 minutes. Both within the cafe and on the sidewalk the defendant cursed Waddell Mackey and his companions. After the defendant had shot Waddell Mackey, two police officers of the city of Charlotte, who had been sitting in an automobile about 50 feet from the scene of the homicide, started toward the defendant, who thereupon raised his gun and shot at the officers, who returned the shots. The defendant then fled. He was subsequently arrested under a criminal warrant charging him with murder.
The evidence for the State tended to show further that shortly before the homicide the defendant met Waddell Mackey, who was walking on a street in the city of Charlotte with a girl, who had been going with the defendant and other friends. The defendant attempted by force to get the girl to leave Waddell Mackey and to go off with him. In consequence of Waddell Mackey's assistance to the girl, the defendant threw rocks at him and his friends, who in turn threw rocks at the defendant. After this occurrence, Waddell Mackey and his friends, including the girl, went to a picture show, where they remained about 30 minutes. After leaving the picture show they went to the cafe, where the defendant found them shortly before the homicide.
Witnesses for the State testified that when the deceased came out of the cafe, in response to the request of the defendant, and while he was on the sidewalk, immediately before the defendant shot him, Waddell Mackey had no knife or other weapon in his hands, and that at the time he was shot he was walking away from the defendant, who was cursing him and demanding that he stop.
As a witness in his own behalf, the defendant testified as follows:
"On Saturday night before Easter, I was going up a street in the city of Charlotte. I saw Bessie Foust, Waddell Mackey, and Sandy Pettis together. Sandy and I had been together earlier that night. I had seen Bessie Foust on McDowell Street, and had talked with her alone. I saw her later at Smoky's. Waddell Mackey came into Smoky's house and stayed a good while. I left him there. Later Waddell Mackey, Robert Pettis, Joe Stanly, and Bessie Foust caught up with me on the street. I called Bessie Foust, and asked her to come with me. She did not come. Waddell Mackey said, `She is not coming to you.' He cursed me and then he and Robert Pettis threw rocks at me. I threw a rock back at them, and then went on down the street. I next saw them at Moore's Cafe. I did not know that they were in the cafe when I went in. After I saw them in the cafe, I left because I was afraid they would jump on me. As I left the cafe they followed me. Waddell Mackey had a knife in his hands while I was in the cafe. He cursed me and said he would *Page 722 
cut my head off. When he came out of the cafe to the sidewalk I got a gun from a man standing by whom I knew as Jim. When I shot Waddell Mackey he had a knife and was coming on me. I shot only once, and then ran. As I ran I threw the gun away. The officers shot at me as I was running. I had never had any trouble before that night with Waddell Mackey. I knew Bessie Foust. I had been going with her for some time. I never stayed with her, although I admit I had had sexual relations with her. I was not jealous because she was going with Waddell Mackey that night. When I left the cafe that night before the shooting, Waddell Mackey and his friends followed me. I did not shoot but one time. I shot Waddell Mackey because he was coming on me with a knife. I did not shoot at the officers. I had not threatened to shoot or kill anyone."
There was evidence offered by the defendant tending to corroborate his testimony. There was also evidence tending to show that the general character of the defendant is good.
In his charge to the jury, the court instructed them that they should return a verdict of guilty of murder in the first degree, or guilty of murder in the second degree, or guilty of manslaughter, or not guilty, as they should find the facts to be from all the evidence submitted to them by the court.
The jury returned a verdict of guilty of murder in the first degree.
From judgment that he suffer death by means of asphyxiation, as prescribed by statute, the defendant appealed to the Supreme Court, assigning errors in the trial.
A careful examination of the record proper in this Court, and of defendant's assignments of error in his appeal to this Court, fails to disclose any error in the trial of the action in the Superior Court or in the judgment from which the defendant has appealed to this Court.
The record of the trial as contained in the statement of the case on appeal does not support the contentions of the defendant that there was error in the failure of the trial court to withdraw testimony from the jury which was inadmissible as evidence because the testimony was hearsay, or that there was error in the charge for that the jury were instructed to return a verdict of guilty of murder in the first degree or not guilty. The record shows that the testimony of the witness, which his examination showed was hearsay, was withdrawn by the court from the jury, and that the jury were instructed fully and correctly with *Page 723 
respect to the verdict which they should return upon the facts as the jury should find them to be from all the evidence.
In the absence of any error in the record proper, or in the trial of the action, the judgment must be affirmed.
No error.